FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 08, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID G.,[1] | No.   1:25-cv-3020-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |
| FRANK BISIGNANO, Commissioner of Social Security,[2] | |
| Defendant. | |

Plaintiff David G. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 supplemental security income

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is substituted as the Defendant.

DISPOSITIVE ORDER - 1

benefits, while the Commissioner asks the Court to affirm the ALJ's denial. As is explained below, the ALJ failed to fairly and fully consider the required supportability and consistency factors for each of the medical opinions; therefore, this matter is remanded for further proceedings.

## I.    Background

In February 2022, at the age of 25, Plaintiff applied for benefits under Title 16, based on attention deficit hyperactivity disorder (ADHD), anxiety/panic, and paranoia/mood disorder.[3] Plaintiff later amended his alleged onset date to January 31, 2022.[4] The agency denied benefits; and at Plaintiff's request, ALJ Robert Schwartz held an online hearing on November 7, 2023, during which Plaintiff and a vocational expert testified.[5]

---

[3] AR 52–53, 59–60,182–90.

[4] AR 44–45.

[5] AR 39–66, 95–97, 102–06.

Plaintiff testified that he lived in a tiny home, with electricity but no plumbing, on his parent's property in Goldendale, Washington.[6] He said he had a valid driver's license but drove only once a month and otherwise took public transportation.[7] He shared that during school, he had an education plan to account for his ADHD and that he graduated from high school, attending a dyslexic-focused boarding school in New York.[8] He stated that he counts pallets for his parents about once a week in exchange for rent and also collects a small amount of recyclables, which he exchanges for money once a week.[9] Plaintiff shared that he enjoys working on EDM (electronic dance music) sounds, and that he shares his created sounds with others through email, with some of his EDM sounds being used at an annual concert.[10]

---

[6] AR 47.

[7] AR 47.

[8] AR 48.

[9] AR 49.

[10] AR 57–58.

DISPOSITIVE ORDER - 3

He testified that he has difficulties with his memory, concentration, social anxiety, dyslexia, sleeping, night terrors, and shopping, as he is paranoid that people will hurt him; and he also gets agitated and irritable around people.[11] He reported that he has panic attacks about 3–4 times a week, which are often instigated when dealing with people.[12]

Plaintiff testified that he sees Elizabeth Chambers, MD, who has treated him since 2008, for his anxiety and ADHD, and that the medication he takes for these conditions has helped but the medications to stabilize his moods have not been effective.[13] Plaintiff shared that he has had legal difficulties related to incidents with his parents and a neighbor, so he is on probation.[14] Plaintiff stated that he no longer uses marijuana or drinks alcohol.[15]

---

[11] AR 52–55, 58.

[12] AR 59–60.

[13] AR 51, 53, 330.

[14] AR 54; *see also* AR 342, 376, 397, 434, 445.

[15] AR 54.

The ALJ issued a decision denying benefits.[16] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence."[17] As to the mental-health prior administrative medical findings and medical opinions,[18] the ALJ found:

- the prior administrative medical findings of Leslie Postovoit, PhD, and Sheri Tomak, PsyD, partially persuasive.

- the treating opinion of Elizabeth Chambers, MD, not fully persuasive.

---

[16] AR 18–37. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[17] AR 27–30. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[18] Because Plaintiff does not challenge the ALJ's evaluation of Plaintiff's physical abilities and the prior administrative medical findings pertaining to such, the Court's analysis focuses solely on the mental-health (non-exertional) issues and aspects of this record.

- the evaluating medical opinion of Thomas Genthe, PhD, not persuasive.[19]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since February 11, 2022, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: affective disorder, anxiety disorder, and ADHD.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

  He can understand and remember simple and detailed instructions that are not complex. Due to deficits in memory, concentration persistence and pace, he is reasonably limited to performing simple and routine

---

[19] AR 31–32. The ALJ did not mention the reviewing medical opinion of Janis Lewis, PhD. AR 29–45.

DISPOSITIVE ORDER - 6

tasks on a sustained basis with only routine breaks. Any
work should involve no more than occasional interaction
or contact with the general public, and no more than
occasional interaction with coworkers or supervisors.
Any work should involve no more than ordinary or
routine changes in work setting or duties.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as laboratory equipment cleaner, laundry worker, routing clerk, and marker.[20]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[21]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error

---

[20] AR 21–33.

[21] AR 1–10.

impacted the nondisability determination.[22] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[23] The court looks to the entire record to determine if substantial evidence supports the ALJ's findings.[24]

---

[22] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error— one that "is inconsequential to the ultimate nondisability determination").

[23] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[24] *Kaufmann v. Kijakazi*, 32 F4th 843, 851 (9th Cir. 2022). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (requiring the court to consider the entire record, not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386

### III.   Analysis

Plaintiff argues the ALJ erred by not properly assessing the medical opinions, the listings, and Plaintiff's reported symptoms. In response, the Commissioner argues the ALJ's findings are supported by substantial evidence and there was no consequential error. Because the ALJ's analysis of the medical opinions fails to abide by the regulations and because these errors are consequential, this matter is remanded for further proceedings.

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred when evaluating the medical opinions and prior administrative medical findings, while the Commissioner argues there was no error or that any found error was harmless. As discussed below, the ALJ's evaluation of the medical opinions and prior administrative medical findings contains error and such errors are consequential.

_____

(8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1    1.    <u>Standard</u>

2    The ALJ must consider and articulate how persuasive he found

3  each medical opinion and prior administrative medical finding.[25] The

4  factors for evaluating the persuasiveness include, but are not limited

5  to, supportability, consistency, relationship with the claimant, and

6  specialization.[26] Supportability and consistency are the most important

7  factors, as the regulations require the ALJ to *consider and explain* the

8  supportability and consistency of each medical opinion and prior

9  administrative medical finding:

10  > The factors of supportability . . . and consistency . . . are the
   > most important factors we consider when we determine how
11  > persuasive we find a medical source's medical opinions or
   > prior administrative medical findings to be. Therefore, we
12  > will explain how we considered the supportability and
   > consistency factors for a medical source's medical opinions
13  > or prior administrative medical findings in your
   > determination or decision.[27]

14

15 _____

16  [25] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th

17  Cir. 2022).

18  [26] 20 C.F.R. § 416.920c(1)–(5).

19  [27] *Id.* § 416.920c(b)(2).

The regulations define these two required factors as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[28]

The ALJ may, but is not required to, explain how the other listed factors were considered.[29] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[30]

---

[28] *Id.* § 416.920c(c)(1)–(2).

[29] *Id.* § 416.920c(b)(2).

[30] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

DISPOSITIVE ORDER - 11

1

## 2.    Dr. Genthe

2    Dr. Genthe conducted a psychological evaluation of Plaintiff on

3    January 31, 2022, the alleged onset date.[31] The evaluation included a

4    clinical interview and mental status examination, with Dr. Genthe

5    noting that, amongst normal findings, Plaintiff gave an excessive

6    amount of detail in response to questions, he was able to recall 2 of 4

7    objects after a 5-minute delay, his fund of knowledge was not within

8    normal limits, he had moderate difficulties following the conversation,

9    he had significant impairment recognizing and expressing his

10    emotions, and his insight regarding his behaviors and their likely

11    outcome on his situation was poor.[32] Dr. Genthe found that Plaintiff's

12    anxiety and associated panic attacks, ADD/ADHD, and an "other

13    specified personality disorder (rule-out)" impacted his ability to work,

14    including being:

15    • markedly limited in his abilities to maintain appropriate

16    behavior in a work-setting and complete a workday and

17    _____

18    [31] AR 284–91.

19    [32] AR 289–91.

workweek without interruptions from psychologically based symptoms.

- moderately limited in his abilities to learn new tasks; adapt to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; communicate and perform effectively in a work setting; set realistic goals and plan independently; and understand, remember, and persist in tasks by following detailed instructions.[33]

Dr. Genthe recommended that Plaintiff be referred to a psychiatric consultation to review his medication regime and dosages because, although the ADHD symptoms were moderately well-managed, his anxiety symptoms were not being well-managed and he also likely had "problematic personality traits, impairing his ability to function, which will have to be formally assessed."[34]

The ALJ found Dr. Genthe's opinion was not persuasive:

[A]s it is not consistent with or supported by the record as a whole. The undersigned notes that the conclusions were

---

[33] AR 287.

[34] AR 288.

1
2
3

based upon a one-time evaluation in January 2022.
Dr. Genthe recommended a referral to a psychiatrist, but apparently did not have access to contemporaneous office notes from Dr. Chambers who treated the clamant regularly and noted improvement with treatment.[35]

4
5
6
7
8
9
10
11
12

As Plaintiff points out, the ALJ made a conclusory statement that Dr. Genthe's opinion was not consistent with or supported by the record, thereby failing to adequately explain how he considered the supportability factor for Dr. Genthe's opinion as is required by regulation.[36] Contrary to the Commissioner's argument otherwise, the ALJ's discussion of Dr. Genthe's evaluation did not satisfy the supportability factor. Even viewing the entire ALJ decision, the ALJ merely summarized Plaintiff's reports to Dr. Genthe and Dr. Genthe's opined limitations; the ALJ did not discuss either Dr. Genthe's

13

14

15

[35] AR 31.

16
17
18
19

[36] 20 C.F.R. § 416.920c(b). *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' [opinions] are correct.").

1   observations or findings during his mental-status examination, a

2   central basis for his opined limitations.[37]

3       Moreover, although the ALJ correctly identified that Dr. Genthe

4   had not reviewed Dr. Chambers' treatment records and thus was not

5   aware that Dr. Chambers was meeting with Plaintiff monthly for

6   medication management and not merely mental-health counseling as

7   described by Plaintiff,[38] the ALJ failed to consider that, while

8   _____

9   [37] *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)

10  (disallowing the ALJ from cherry picking evidence to support a

11  conclusion that contradicts the overall diagnostic record).

12  [38] Dr. Genthe wrote "[n]o records were provided for review" and he

13  noted that Plaintiff "stated that he is currently receiving mental health

14  counseling services and has been receiving such for/since '10 years.'"

15  AR 284. It is the Social Security Administration's (SSA) responsibility

16  to "give the [consultative] examiner any necessary background

17  information about [the claimant's] condition." 20 C.F.R. § 416.917; *see*

18  *also* Program Operations Manual System (POMS) DI 22510.017(B).

19  Therefore, on remand, if another consultative examination is held, the

DISPOSITIVE ORDER - 15

Dr. Chambers often made normal mental-health observations during her sessions, her treatment notes also reflect that Plaintiff had difficulty managing his emotions, as was reflected in his police involvement resulting from his aggression toward his parents, a woman, and a neighbor, as well as when he visited the emergency department on two occasions after repeatedly hitting his head on the jail's cement wall.[39] Thus, any improvement or stability noted by Dr. Chambers in her treatment records, must be considered in the context of the longitudinal record revealing that Plaintiff struggled significantly with personal interactions, behavioral judgments, and impulsivity.[40]

_____

examiner is to be given sufficient records authored by Dr. Chambers, along with the evaluations by Kerry Biermann, MD, and Skye Newkirk, LICSW, to afford the evaluator a longitudinal perspective.

[39] *See, e.g.*, AR 350–58, 427–36.

[40] *See Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016) ("It is the nature of bipolar disorder that symptoms wax and wane over time."); *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles

These significant struggles are consistent with other medical records. In October 2022, Plaintiff was seen by Kerry Biermann, MD, a family medicine physician for an initial evaluation and mental-health referral.[41] Dr. Biermann noted that Plaintiff was not forthcoming with information (vague and difficult to elucidate), required significant prompting to give answers, had an extremely flat affect, was withdrawn and guarded, showed no emotion toward either parent who was present during the evaluation, avoided eye contact, and was circumstantial, although Plaintiff was orientated, cooperative, had normal speech, and his attention and concentration were grossly intact. Dr. Biermann assessed:

> I am certainly impressed by Skyler['s] lack of emotion and concern for his parents. . . . His extremely flat affect is of

_____

of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

[41] AR 374–79.

1

2

3

4

    concern. I certainly feel this is an extremely troubled young man and he needs ongoing mental health care which he is getting through his psychiatrist [Dr. Chambers] in Hood River. His parents willingness to stick by his side despite his lack of emotion towards them and [h]is frank aggression and anger at them is compelling for their parental commitment.

. . . .

5

6

    He appears to be significantly antisocial although I do not see it in my evaluation of him.

7

8

9

    Skyler['s] mental health issues are well beyond my capability as a primary care provider and I will be referring him to our Behavioral Health providers for further evaluation and comment for the court. I have encouraged him and I have encouraged his parents to facility his ongoing psychiatric care with Dr. Chambers.[42]

10

11

12

13

14

15

16

The follow-up evaluation was completed by licensed social worker Skye Newkirk on November 7, 2022.[43] In addition to noting Plaintiff's reported symptoms, along with his observed engagement, calmness, and regular rate of speech, Mr. Newkirk noted that Plaintiff was mildly unkempt, did not appropriately respond to direct questions, had limited eye contact, was excessive in his speech by talking over Mr. Newkirk and being difficult to interrupt, had a dysphoric mood,

17

18

---

[42] AR 379 (cleaned up).

19

[43] AR 380–86.

DISPOSITIVE ORDER - 18

had a congruent and flat affect, had impaired attention and

concentration, was a poor historian with timelines, had limited insight

and fair judgment, and had an abnormal thought process with

circumstantial, tangential, loose associations, flight of ideas,

disorganization, and confusion.[44] Even though Mr. Newkirk

recommended counseling, Mr. Newkirk endorsed that Plaintiff instead

continue to see Dr. Chambers for medication management given their

long-term rapport.[45]

When viewing the longitudinal medical record, the ALJ's finding

that Dr. Genthe's opinion was inconsistent with the record is not

supported by substantial evidence, and the ALJ's conclusory statement

that Dr. Genthe's opinion is not supported is also not supported by

substantial evidence. These errors impacted the ALJ's analysis:

because if Dr. Genthe's marked limitations are adopted into the RFC,

---

[44] AR 380–82.

[45] AR 385.

the vocational expert testified that Plaintiff would be unable to sustain

fulltime work.[46]

> 3.   Dr. Lewis

Days after Dr. Genthe's evaluation, Dr. Lewis was asked to

review his report. Dr. Lewis found that Dr. Genthe's diagnosis, severity

and functional limitations, and onset date of January 31, 2022, were

supported by the information cited in Dr. Genthe's report; however,

Dr. Lewis opined that the likely duration of Plaintiff's impairments

was 6 months (rather than the 9–12 months noted by Dr. Genthe).

Dr. Lewis wrote:

> [Plaintiff] has worked in the past.  Cooperative. No
> cognitive problems. Anxiety is partly based on lack of
> income. Is not availing himself of [mental health]
> treatment. If he did, he would again be employable. States
> there is 'no work' where he lives [in Goldendale] which is
> unlikely.[47]

---

[46] The vocational expert testified that an individual who is off task

more than 10 percent of the workday or absent more than one day a

month would not be able to sustain competitive employment. AR 64–

65.

[47] AR 295.

Plaintiff highlights that the ALJ did not mention Dr. Lewis's opinion, and as a result, Plaintiff argues the ALJ failed to consider and explain the required consistency and supportability factors for Dr. Lewis's opinion. The Commissioner counters that the ALJ did consider Dr. Lewis's opinion, as the ALJ cited to Exhibit 1F, which is the exhibit containing Dr. Lewis's opinion. However, the ALJ pin-cited to Exhibit 1F/5, which is a single page of Dr. Genthe's opinion, not Dr. Lewis's opinion.[48] Moreover, a mere citation to a medical opinion does not satisfy 20 C.F.R. § 416.920c(b)'s requirement that the ALJ "articulate in our determination or decision how persuasive we find all of the medical opinions."[49]

Furthermore, contrary to the Commissioner's suggestion otherwise, the ALJ's failure to articulate how persuasive he found Dr. Lewis's opinion is not harmless. This error is compounded by the ALJ's errors when considering Dr. Genthe's opinion, the opinion that Dr. Lewis reviewed. Moreover, even though Dr. Lewis opined that

---

[48] AR 31.

[49] 20 C.F.R. § 416.920c(b).

Plaintiff's impairment was likely to last six months with treatment, the ALJ needs to consider that 1) Dr. Lewis also wrote "[o]nset 1/31/22 with a duration of a year,"[50] and 2) Plaintiff's negative interactions with law enforcement and documented impulsivity at the jail occurred more than a year after Dr. Lewis's review of the medical period, during which time Plaintiff was still being treating by Dr. Chambers monthly.[51] In addition, it seems that Dr. Lewis did not understand that Plaintiff was having his medication managed monthly by Dr. Chambers. While an ALJ need not address every piece of evidence, an ALJ "may not ignore significant probative evidence that bears on the disability analysis."[52]

---

[50] AR 295. In addition, Plaintiff accurately highlights that the ALJ did not rely on the six-month duration as a basis to discount Dr. Lewis's opinion, given that the ALJ did not discuss Dr. Lewis's opinion at all. *See Burrell*, 775 F.3d at 1138 (The court is "constrained to review the reasons the ALJ asserts.").

[51] AR 397–26 434–36.

[52] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

1

4.    <u>Dr. Chambers</u>

2

Dr. Chambers began regularly treating Plaintiff in 2008 but not

3

on a more regular/monthly basis until August 2021.[53] During the

4

monthly telephone or online medication-management sessions with

5

Dr. Chambers, Plaintiff would update her as to his conduct, symptoms,

6

and medication side-effects. In addition to noting that Plaintiff had

7

negative interactions with his parents, a neighbor, and a woman,

8

Dr. Chambers regularly noted that Plaintiff was alert, orientated,

9

cooperative, engaging, and with normal speech, intact memory, good

10

concentration, and good insight/judgment. She noted that Plaintiff was

11

resistant to taking mood stabilizers, but that Lamotrigine was

12

unsuccessfully tried as it caused an upset stomach and rash.[54] In July

13

2022, Dr. Chambers wrote:

14

> He appears to be taking his medications appropriately as he
> is not requesting any early refills. Refill medications today.

15

> Schedule follow-up in a month. Reviewed risks and benefits
> of medications, target symptoms and goals of treatment,

16

17

18

[53] *See, e.g.*, AR 330, 394.

19

[54] AR 317, 433.

1

2
encouraged him to maintain his sobriety but I still wonder
long-term how he will support himself.[55]

3
On July 7, 2023, Dr. Chambers noted, "[h]e feels in general he has not

4
lost control of his temper [although he went to his neighbor's house to

5
confront him about a Facebook message] and [he] did not think it was

6
extreme to poke someone or come to their house unannounced."[56]

7
Earlier that year, in March 2023, Dr. Chambers completed a

8
Mental Source Statement, wherein she opined Plaintiff was:

9
- moderately limited in his abilities to remember locations and

10
work-like procedures; carry out detailed instructions; make

11
simple work-related decisions; interact appropriately with the

12
public; accept instructions and respond appropriately to

13
criticism from supervisors; get along with co-workers or peers

14
without distracting them or exhibiting behavioral extremes;

15
and maintain socially appropriate behavior and to adhere to

16
basic standards of neatness and cleanliness.

17

18
[55] AR 345.

19
[56] AR 435.

1
2
3
4
5
6
7
8
9
10

- markedly limited in his abilities to understand and remember detailed instructions, maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being districted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[57]

11
12
13
14

Dr. Chambers also opined that Plaintiff was markedly limited in the B criteria of concentrating, persisting, or maintaining pace; that Plaintiff would be off task more than 30% of the workweek; and he would miss 4 or more days of work per month.[58] Dr. Chambers wrote:

15
16

I have met with/worked with Skyler since 2008. He has always struggled in school despite much support provided

17
18
19

[57] AR 392–96, 437–40. The statement is undated but based on the treatment records and facsimile date was completed in March 2023.

[58] AR 394.

DISPOSITIVE ORDER - 25

by school and parents. He has ADHD [unreadable] is still present. He has had depression on and off and has had mood swings and anger problems – these are improved when he abstains from drugs and alcohol. He has not tolerated mood stabilizers. He has obtained part time work but with could never maintain employment. He struggles with organization, concentration, planning, and follow through. I think he would be homeless if it weren't for his parents support.[59]

The ALJ found Dr. Chambers's opinion not fully persuasive because "[t]he marked findings are not consistent with the progress notes reflecting the claimant to be stable on medications with normal mental status examinations, including attention and concentration. Furthermore, the limitations noted on the form are internally inconsistent as noted above."[60] As Plaintiff highlights, although the treatment notes' mental status examinations generally indicate normal findings, the other comments in the treatment notes, along with other medical records, reflect that Plaintiff's impulsivity and anger management cause him to have ongoing interactions with law enforcement. Moreover, when

---

[59] AR 396.

[60] AR 32.

DISPOSITIVE ORDER - 26

1  jailed, he had to be taken to the emergency department twice due

2  to him repeatedly hitting his head on the jail's cement wall. This

3  record fails to support the ALJ's decision that Dr. Chambers's

4  comments that Plaintiff was "stable" was inconsistent with

5  Dr. Chambers' marked limitations.

6      The ALJ also found inconsistency between Dr. Chambers'

7  checked findings for B criteria of the mental listings with her

8  other checked findings. Because this matter is being remanded

9  for the ALJ to re-evaluate the medical opinions, the Social

10  Security Administration on remand is to contact Dr. Chambers to

11  seek clarification as to her checked "mild" findings for some of the

12  B criteria versus her other checked moderate and marked

13  findings for the listed mental activities.[61] In addition, if

14

15

_____

16  [61] "The ALJ always has a special duty to fully and fairly develop the

17  record" to make a fair determination as to disability, even where, as

18  here, "the claimant is represented by counsel." *Celaya v. Halter*, 332

19  F.3d 1177, 1183 (9th Cir. 2003) (cleaned up). This "affirmative

1  Dr. Chambers is still treating Plaintiff, the Social Security

2  Administration (SSA) is to obtain an updated medical source

3  opinion from Dr. Chambers.

4      5.    Prior Administrative Medical Findings

5      Dr. Postovoit and Dr. Tomak reviewed the medical record

6  available to them in April 2022 and August 2022, respectively. Based

7  on her review, Dr. Postovoit opined that Plaintiff was moderately

8  limited in his abilities to carry out detailed instructions; complete a

9  normal workday and workweek without interruptions from

10  psychologically based symptoms and to perform at a consistent pace

11  without an unreasonable number and length of rest periods; interact

12  appropriately with the general public; and accept instructions and

13  respond to criticism from supervisors, and opined that Plaintiff was

14  moderately limited in the following B criteria: interact with others, and

15  concentrate, persist, or maintain pace.[62] In turn, Dr. Tomak agreed

16  _____

17  responsibility to develop the record" is necessary to ensure that the

18  ALJ's decision is based on substantial evidence. *Id.* at 1184.

19  [62] AR 69–71.

with Dr. Postovoit's B-criteria findings and also opined that Plaintiff was moderately limited in the following abilities: maintain attention and concentration for extended periods; accept instructions and respond appropriately to criticism from supervisors; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[63]

The ALJ found these prior administrative medical findings to be partially persuasive:

> The undersigned notes the claimant reports difficulty tolerating change and this is supported by the record, and therefore, the undersigned has included adaptive limitation. The undersigned notes the state agency did not have the benefit of the current medical evidence of record or the claimant's testimony when making their assessment.[64]

These "notes" by the ALJ fail to satisfy the requirement that he *consider and explain* the supportability and consistency of each prior administrative medical finding, i.e., how they were or were supported

---

[63] AR 85–89.

[64] AR 32.

1  by "more relevant . . . objective medical evidence and supporting

2  explanation presented by [the] medical source," *and* 2) "consistent with

3  the evidence from other medical sources and nonmedical sources in the

4  claim."[65]

5      On remand, the ALJ's evaluation of these prior administrative

6  medical findings must satisfy the regulation requirements.

7  **B.    Listings and Symptom Reports: these issues are moot.**

8      Plaintiff argues the ALJ failed to fairly assess paragraph A, B,

9  and C criteria as to Listings 12.04, 12.06, and 12.11, as well as give

10 legally sufficient reasons for discounting Plaintiff's subjective

11 complaints. Because the Court is remanding the case with direction

12 that the ALJ re-evaluate the medical opinions and administrative

13 medical findings, the ALJ must re-evaluate the listings and Plaintiff's

14 symptom reports. When doing so, the ALJ is to consider whether

15 Plaintiff's mental-health impairments impacted his insight and

16

17

18  _____

19  [65] 20 C.F.R. § 416.920c(c)(1)–(2).

judgment as to whether to take mood stabilizers and other medication and to participate in counseling.[66]

## C.    Remand: further proceedings

Plaintiff prefers a remand for payment of benefits. However, when the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[67] At this time, remand for further proceedings, including obtaining clarification as to Dr. Chambers' opined limitations and a new medical opinion from her if she is still treating Plaintiff, is appropriate.

## IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is develop the record and reevaluate—with meaningful articulation and evidentiary

---

[66] SSR 16-3p; *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

[67] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

support—the sequential process. Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The SSA must develop the record and issue a new decision within **180 days**.

3.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 9**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 7th day of August 2025.

_____
EDWARD F. SHEA
Senior United States District Judge